KITSAP PHYSICIANS
SERVICE, Plaintiff,

v.

WASHINGTON DENTAL SERVICE, et
al., Defendants.

No. C87–1002D.

United States District Court,
W.D. Washington.

Oct. 8, 1987.

John C. Guadnola, Gordon, Thomas & Honeywell, Tacoma, for plaintiff.

Timothy J. Parker, Carney, Stephenson, Badley, Smith, Mueller & Spellman, Seattle, for defendants.

## ORDER

DIMMICK, District Judge.

The Court has before it the following motions:

1. Defendant Washington Dental Service's motion to dismiss for lack of subject matter jurisdiction;

2. Defendant's motion to strike affidavit of Robert Wilson;

3. Plaintiff Kitsap Physician Service's motion for preliminary injunction.

All three motions are denied.

The Defendant has also filed a motion for leave to file supplemental brief. The Court has considered defendant's supplemental brief and plaintiff's response, and heard oral argument on same. The affidavit and response add nothing to the Court's analysis.

## FACTS

This is an anti-trust action under § 2 of the Sherman Act (15 U.S.C. § 2). Section 2 prohibits attempted monopolization. Plaintiff Kitsap Physicians Service ("KPS") complains of attempted monopolization of the pre-paid dental insurance market by defendant Washington Dental Service ("WDS").

WDS and KPS are both dental care service providers operating in Kitsap, Jefferson and Mason Counties. In addition, WDS provides dental care services statewide.

WDS's payments to its member dentists are higher than KPS's payments to KPS's member dentists. (The two services use different reimbursement guidelines.) WDS (and KPS) has a nondiscrimination clause in its contract with its member dentists. This clause ensures that WDS will not be charged more than the general public or other providers are charged for the same service. When WDS finds out that a member dentist is charging a lower fee for the same service to another patient, WDS will reduce its payments to the member dentist to this lower fee. WDS has followed this policy regularly and vigorously for the last nine years.

When WDS found out that its member dentists were charging KPS less than WDS, WDS reduced its payments to member dentists accordingly. As many of WDS's member dentists had more WDS than KPS patients, they cancelled their contract with KPS rather than accept the reduced rate for their WDS patients. KPS ostensibly lost 26 of its 60 member-dentists.

### Court Has Subject Matter Jurisdiction

Under the Sherman Act, to determine the effects on interstate commerce, the Court must take into account defendant's "overall effect on interstate commerce and not simply their effect on the plaintiffs before the court." *Hahn v. Oregon Physician's Service,* 689 F.2d 840, 844 (9th Cir.1982). The Court must make a broad inquiry into the relevant aspect of interstate commerce, and

whether as a matter of practical economics, there is a "not insubstantial effect" on interstate commerce. *Hahn* at 844.

This action may have a substantial impact on contracts that KPS has with the federal government and multi-state employers, and cause these out-of-state purchasers of dental services to have to find other and possibly more costly dental service providers.

This Court cannot characterize this impact on these out-of-state purchasers of dental services as "not insubstantial."

**Motion to Strike Affidavit of Robert Wilson**

The Court did not consider any of the material in affidavits submitted by either party that would have been inadmissible under the Federal Rules of Evidence.

Defendant should keep in mind, however, that district courts, when granting preliminary injunctions, "may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial." *Flynt Distributing Co. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir.1984).

**Motion for Preliminary Injunction**

■ Plaintiff has little chance of succeeding on the merits of its claim of attempted monopolization. As plaintiff must at *least* have a "fair chance" [1] of prevailing on the merits before a preliminary injunction is issued, plaintiff's motion is denied.

■ To establish a claim of attempted monopolization in the Ninth Circuit, plaintiff must prove the following four elements: (1) specific intent to control prices or destroy competition; (2) predatory or anti-competitive conduct directed toward accomplishing an unlawful purpose; (3) a dangerous probability of success; and (4) causal anti-competitive injury. *William Inglis and Sons Baking Co. v. ITT Continental Baking Co.*, 668 F.2d 1014 (9th Cir.1981); *Drinkwine v. Federated Publi-*

*cations, Inc.*, 780 F.2d 735 (9th Cir.1985), *Syufy Enterprises v. American Multicinemas, Inc.*, 783 F.2d 878 (9th Cir.1986).

**Defendant's Antidiscrimination Policy is Not Intended to "Control" Prices**

Defendant's antidiscrimination policy ensures that defendant will not be charged more than another user of the same services.

■ The courts have explicitly endorsed the nondiscrimination policy, stating that "a provision in the participating agreement that the clinic may not charge [insurer] more than it charges the public ... is *only good business sense.*" *Mich. Ass'n of Psychotherapy Clinics v. Blue Cross and Blue Shield*, 1982–83 Trade Cases (CCH) 70, 767, 70775 (1982) (emphasis added). *See also Blue Cross and Blue Shield of Mich. v. Mich. Ass'n of Psychotherapy*, 1980–82 Trade Cases (CCH) 75, 792 (E.D. Mich.1980).

The nondiscrimination clause, far from being a price control measure, provides insurance companies with protection from (1) being overcharged by dentists, and (2) in the long term, being priced out of the highly competitive dental insurance market.

**Antidiscrimination Policy is Not "Predatory" or Anticompetitive Conduct**

■ Predatory conduct exists if the disputed practice is not "justified by any normal business purpose." *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 105 S.Ct. 2847, 2860, 86 L.Ed.2d 467 (1985). As previously discussed, the nondiscrimination clause makes good business sense. KPS has a similar clause in their own contract.

Plaintiff also argues that defendant's contract provisions are being arbitrarily enforced against KPS. In fact, defendant has been enforcing its nondiscrimination clause in exactly the same way for the last nine years.

---

**1.** A moving party need only show a "fair chance" of succeeding on the merits if the balance of hardships tip decidedly in the movant's favor. *Benda v. Grand Lodge of the Internat'l Assoc. of Machinists*, 584 F.2d 308 (9th Cir.

1978), *cert. dismissed* 441 U.S. 937, 99 S.Ct. 2065, 60 L.Ed.2d 667 (1979). As the Court finds that plaintiff's chance of success on the merits is not a "fair" one, the Court need not decide in whose favor the balance tips.

It is clear to this Court that there is a valid business purpose for WDS's conduct and that this business purpose is not unlawful.

**Defendant Does Not Have a Dangerous Probability of Success**

Plaintiff offers no evidence that defendant has a dangerous probability of monopolizing the market. Plaintiff instead chooses to rely on *Syufy, supra,* for the proposition that a prima facie case is made for a dangerous probability of success if defendant has a large market share. Even using plaintiff's assumption that defendant has 22% of the relevant market, this does not rise to the level of "large market share." (In *Syufy,* the "large market share" was 60–69%. *Syufy* at 883.) Plaintiff contends that defendant has market power. The district court in *Pa. Dental Ass'n v. Medical Services Ass'n of Pa.,* 574 F.Supp. 457 (M.D.Pa.1983), stated that the relevant market included commercial insurers. The circuit court in *Pa. Dental,* relying in part upon an economist's affidavit explaining the cross elasticity of demand between various payment plans, found it necessary to consider pre-paid insurers' ability to compete with other carriers in the market for sale of group dental insurance plans." *Pa. Dental,* 815 F.2d 270, 277 (3rd Cir.1987). This court agrees with the Pennsylvania court's analysis. Defendant's relevant market share in this case is 13% (11,625 out of 87,300—figures supplied by plaintiff). A 13% market share (or even a 22% share, excluding the commercial insurers) is not enough market power to give rise to a prima facie case of dangerous probability of success of monopolization.

**Causal Anticompetitive Injury**

As previously discussed, defendant's practices are in fact pro-competitive.

Plaintiff has not met its burden at this time of establishing *any* of the elements above and thus has little chance of succeeding on the merits.

### CONCLUSION

THEREFORE, plaintiff's motion for preliminary injunction is DENIED; defendant's motion to strike the affidavit of Robert Wilson is DENIED; and defendant's motion to dismiss for lack of subject matter jurisdiction is DENIED.

The Clerk of the Court is instructed to send copies of this Order to all counsel of record.